UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD MARKGRAFF,

        Case No. No. 17-10511

        Plaintiff,

        District Judge Marianne O. Battani

v.

        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Donald Markgraff ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #12] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #11].

## I.  PROCEDURAL HISTORY

On November 6, 2012, Plaintiff filed applications for DIB and SSI, alleging disability as of October 22, 2011 (Tr. 274, 278). Upon initial denial of the claim, Plaintiff requested

an administrative hearing, held on May 2, 2014 (Tr. 104). Administrative Law Judge ("ALJ") Ronald T. Jordan presided. Plaintiff, represented by attorney William Watkinson, testified, as did Vocational Expert ("VE") James M. Fuller (Tr.109-125, 125-129). The ALJ held a supplemental hearing on February 17, 2015 at which Plaintiff and Medical Expert ("ME") Anthony E. Francis, M.D. testified (Tr. 80, 83-88, 89-102 ). On March 19, 2015, ALJ Jordan determined that Plaintiff was capable of a significant range of unskilled, exertionally light work (Tr. 16, 25). On January 27, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-6). Plaintiff filed suit in this Court on February 17, 2017.

## II. BACKGROUND FACTS

Plaintiff, born March 19, 1975, turned 40 on the day of the administrative decision (Tr. 25, 274). He received a GED in 1995 and worked previously as an assembler, carpenter, factory worker, packager, and utility operator (Tr. 353). He alleges disability as a result of two ruptured thoracic discs (Tr. 352).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

### 1. May 2, 2014 Hearing

He had not worked since injuring his thoracic spine at work (Tr. 109). Extensive physical therapy subsequent to the accident had not improved his condition (Tr. 110). His former job had an official lifting requirement of 50 pounds but in reality, he was sometimes

required to lift up to 220 pounds (Tr. 110). He was supported by his Workers' Compensation settlement and his wife's income (Tr. 111-112).

On a typical day, he arose by 9:00 a.m., ate breakfast, took a pain pill, and sat down and watched television (Tr. 112). Due to the medication side effect of drowsiness, he spent most of the day watching television and napping (Tr. 112). He had two children, 15 and 12, living at home but did not participate in getting them ready for school (Tr. 112). He did not perform any household chores (Tr. 113). His driving was limited to distances of 10 miles or less (Tr. 113). On a scale of one to ten, his back pain level was a "six" with medication and "eight" without (Tr. 114).

In response to questioning by his attorney, Plaintiff described his pain as being stabbed with "a knife and twisting it" (Tr. 115). He experienced the pain constantly (Tr. 115). His pain was worse in damp weather and became worse with over-activity (Tr. 115). He also experienced hand numbness two to three times a day and right leg numbness three to four times a week (Tr. 115). During bouts of hand numbness, lasting up to 20 minutes, he was unable to hold anything (Tr. 116). At times when he experienced leg numbness, he was required to sit down immediately to avoid falling (Tr. 116). Since becoming injured, he had fallen down between 30 and 40 times due to leg numbness (Tr. 117).

Plaintiff was unable to sit for more than 25 minutes at a time, stand for more than five minutes, or walk for more than half a block (Tr. 117-118). After walking for half a block, he required a 10 to 15 minute break before walking again (Tr. 119). He was unable to lift

-3-

more than five pounds, climb a ladder, or climb more than two steps at a time (Tr. 119).  He

experienced a severely limited ability to twist and kneel and was unable to bend, crouch,

crawl, or reach overhead (Tr. 120).  He had refrained from taking pain medication before the

hearing because he wanted to remain "coherent" during his testimony (Tr. 121).  While

medicated, he was unable to read for more than two minutes before falling asleep (Tr. 121-

122).  The pain caused sleep disturbances preventing him from getting more than four hours

of sleep at night (Tr. 122).  Due to nighttime sleep disturbances, he typically took five 20-

minute naps during the day (Tr. 123).  On occasions during damp weather, he was unable to

get out of bed (Tr. 124).  Although he had been taking Percocet for at least a year, he

continued to experience the side effect of drowsiness (Tr. 125).

### 2.  February 17, 2015 Hearing

Plaintiff testified he was capable of standing up to 20 minutes (Tr. 83).  He was now

unable to get more than two hours of sleep each night (Tr. 86).  He took two to three naps a

day lasting up to an hour (Tr. 87).  Otherwise, he had not a experienced a significant change

in his condition since the previous hearing (Tr. 83-85).  His dosage of Percocet had been

increased in the last year (Tr. 87).  He began taking an antidepressive medication the

previous month after his doctor observed that he appeared depressed (Tr. 88).  He denied

surgery or recent physical therapy but had received two injections in the past year (Tr. 88).

### B.  Dr. Francis' Testimony

Dr. Francis testified as follows:

He noted that treating records created after the September, 2011 workplace accident limited Plaintiff to 10 to 15 pounds lifting with a preclusion on overhead reaching (Tr. 91). He noted that the treating records did not include a diagnosis of upper extremity radiculopathy (Tr. 93, 95).   He found that the medical records did not support a finding that Plaintiff met a listed impairment (Tr. 93).   He noted a finding that Plaintiff could lift up to 20 pounds and walk up to six hours in an eight-hour workday with occasional postural activity (Tr. 93).   He noted that the findings were "perfectly appropriate" based on the treating and examining source evidence (Tr. 94).  He found no evidence of a preclusion on overhead reaching (Tr. 94).  He characterized Plaintiff's current dose of Percocet as "pretty low" (Tr. 96).  He noted that one evaluation mentioned radiculopathy of the bilateral upper extremities which "anatomically . . . doesn't make any sense" given that Plaintiff's injuries were not to the cervical spine (Tr. 96-97).

In response to questioning by Plaintiff's attorney, Dr. Francis later allowed that the earlier, post injury records showed "neuropathy" of the right upper extremity (Tr. 93, 95, 98). He stated that February, 2012 imaging studies of the cervical spine supported "some cervical [spine] compromise" at the time of injury (Tr. 100).  He stated that evidence of ongoing cervical nerve root compression would meet Listing 1.04(A) (Tr. 100).

-5-

Dr. Francis opined that radiculopathy of the upper extremities "probably cleared" within 12 months of the injury (Tr. 101). He noted no "evidence where anybody's diagnosed him with radiculopathy outside of an immediate time period" of the injury (Tr. 101).

### C. Medical Records

#### 1. Records Related to Plaintiff's Treatment[1]

On September 18, 2011, Plaintiff sought emergency treatment for "thoracic strain" (Tr. 415). He reported moderate pain, numbness, and difficulty walking (Tr. 416). He was prescribed Motrin 800 and Flexeril (Tr. 434-435). Imaging studies of the cervical spine were unremarkable (Tr. 425, 752). Imaging studies of the thoracic and lumbar spine showed only minimal degenerative changes (Tr. 426-427, 753-754). Plaintiff reported right hand and foot tingling with level "five" back pain (Tr. 443). Betty Rumschlag, D.O. noted that the reported symptoms did "not seem to correlate with the back pain that he is having" (Tr. 444). She found that Plaintiff could return to work "as tolerated with no lifting over 10 pounds" (Tr. 445).

Physical therapy notes from the end of the month state that Plaintiff had been reassigned to less strenuous job duties (Tr. 437). Plaintiff reported only minimal improvement from physical therapy (Tr. 447). An MRI of the thoracic spine from the following month showed disc protrusions at T5-T6 and T8-T9 but no cord compression or

---

[1]Records created prior to the period under consideration (before April 3, 2014) are included for background purposes only (Tr. 47).

signal changes (Tr. 428).   Gary Davis. D.O. noted that Plaintiff denied radiating lower extremity pain (Tr. 448).   A neurological evaluation of the upper extremities was unremarkable (Tr. 448).  He found that Plaintiff could lift up to 20 pounds (Tr. 448).  Keith R. Barbour, D.O. noted 4/5 strength in the bilateral upper extremities (Tr. 544, 646).   In December, 2011, Iman S. Abou-Chara, M.D. referred Plaintiff for steroid injections (Tr. 538, 695).   Later the same week, Lesley Pompy, M.D. noted "no pain behavior" and a slow but normal gait (Tr. 762).   He noted 4/5 strength in the left extremities (Tr. 763, 802).

In January, 2012, neurosurgeon Frederick Junn, M.D. noted "no apparent distress" with  full muscle strength and a normal gait (Tr. 450).   Undated records by Dr. Pompy note a guarded prognosis with the potential for "suffering from permanent damages" (Tr. 784). Physical therapy records also note full muscle strength and a full range of motion (Tr. 533). Dr. Junn opined that continued conservative treatment was appropriate (Tr. 451).   He found that Plaintiff could return to work without restrictions if an upcoming MRI was normal (Tr. 451).   A steroid injection was administered without complications (Tr. 777).   A February, 2012 MRI of the cervical spine showed mild disc bulging at C3-C4, C4-C5, C5-C6, and C6-C7 (Tr. 449).   Therapy records noted somatic complaints of the head, neck, lumbar spine, and upper extremities (Tr. 529).   In March, 2012, Dr. Junn noted that despite Plaintiff's report of upper extremity symptoms, he demonstrated full muscle strength and that the MRI did not show "significant stenosis" (Tr. 453, 767).   A full body bone scan was wholly unremarkable (Tr. 455, 576, 699).   Physical therapy records note Plaintiff's report that he

experienced hand numbness while sneezing (Tr. 515).

April, 2012 physical therapy records note "somatic dysfunctions" of the cervical, thoracic, lumbar, sacral, pelvis, and extremities (Tr. 493). Plaintiff requested stronger pain medication (Tr. 496, 698). He demonstrated 5/5 muscle strength (Tr. 629). May, 2012 physical therapy records note that Plaintiff was "totally incapacitated" until the first week of June (Tr. 470). Plaintiff reported that his "average activity level" had been "5 out of 10," but the next month "3 out of 10" (Tr. 471, 598). He reported an exacerbation of symptoms after washing the car the previous day (Tr. 471). He reported "a little" improvement in back pain (Tr. 476). He exhibited an antalgic gait and a limited range of lumbar motion (Tr. 481, 599).

In November, 2013, Plaintiff reported good results from pain medication and denied side effects (Tr. 588). In May, 2014, Dr. Barbour noted that Plaintiff's condition was unchanged (Tr. 840). Dr. Barbour's July, 2014 records note an increase in upper back pain coinciding with Plaintiff's attempt to quit his two-pack-a-day habit (Tr. 836). Plaintiff reported that he was leaving town (Tr. 836).

## 2. Non-Treating Records

In May, 2012, Miles Singer, D.O. performed a consultative exam related to Plaintiff's application for Workers' Compensation benefits (Tr. 456-461). Dr. Singer found that he "was unable to identify any evidence of ongoing physical impairment" or "correlate [the] subjective complaints of pain to any objective physical findings" (Tr. 456). He found that Plaintiff was capable of returning to work without restrictions (Tr. 456). He added that he

"did not believe" that Plaintiff's "cervical spine could have been injured" at the time of the September, 2011 workplace incident (Tr. 456-457). Dr. Singer noted no anxiety or depression (Tr. 457).

In January, 2013, Tanvir Qureshi, M.D. performed a consultative exam on behalf of the SSA, noting Plaintiff's non-radiating back pain (Tr. 579). Dr. Qureshi noted a full range of motion in all extremities and a normal gait but a limited range of spine motion (Tr. 581). Plaintiff demonstrated bilateral 4/5 grip strength (Tr. 581).

In March, 2013, Clifford M. Buchman, D.O. performed a consultative examination, noting Plaintiff's report that he was able to drive for short distances, read, watch television, and use a computer (Tr. 822). Plaintiff reported that he did not do housework or yard work and required "some assistance" with showering and dressing (Tr. 822). Dr. Buchman noted a slow ("barely able to heel and toe") walk with a limited range of motion and "poor" bilateral hand strength (Tr. 823). He diagnosed Plaintiff with thoracic disc disease with radiculopathy of the bilateral upper extremities (Tr. 825). He opined that based on the examination and the objective records, the thoracic disc disease and radiculopathy were "causally related to the work incident . . ." (Tr. 825). He restricted Plaintiff to no more than15 pounds lifting "floor to waist" and 10 for "waist to chest" (Tr. 825). He restricted all overhead work and found the need for a sit/stand option (Tr. 825). He precluded all repetitive twisting, bending or lifting (Tr. 825). At a December, 2013 deposition, Dr. Bachman stated that "protruding discs of the dorsal spine produc[ed] radiculopathy to both

upper extremities" (Tr. 310).  He stated that "frequently, thoracic nerve herniated discs and radiculopathy don't present in a classical sense the same way that [a lumbar spine herniation] does" (Tr. 329).  Dr. Bachman stated that he did not know which nerves were being affected but opined that "an EMG . . . is not going to give you much more specific evidence" (Tr. 330).

### 3.  Records Submitted After the ALJ's March 19, 2015 Decision[2]

In January, 2015, William Powers, M.D. noted Plaintiff's report of continued back pain and mild depression (Tr. 864).  A January, 2015 chest x-ray was unremarkable (Tr. 883).  An imaging study of the thoracic spine was normal (Tr. 882).  A February, 2015 MRI of the lumbar spine was unremarkable (Tr. 885).  An MRI of the thoracic spine showed "tiny" disc protrusions at T5-T6 and T8-T9 with "possibly minimal mass effect on the cord" (Tr. 884).  The studies was characterized as "essentially stable" (Tr. 884).  The same month, Plaintiff underwent a testosterone injection (Tr. 859).  Plaintiff was urged to quit smoking (Tr. 859).

### D.  Vocational Testimony

VE Fuller classified Plaintiff's former work as an industrial maintenance and repairer

---

[2]Under the sixth sentence of 42 U.S.C. 405(g), material submitted after the ALJ's decision forms a basis for remand only if the newer evidence would be likely to change the ALJ's decision and, the claimant can show "good cause" for the failure to provide it prior to the administrative determination.  *Id.*  Plaintiff does not rely on the newer material in support of his arguments for remand.  Further, my own review shows that it would not be likely to change the ALJ non-disability findings.

as skilled and exertionally heavy and work as a line worker/operator, semiskilled/heavy [3] (Tr.

125-126).   ALJ Jordan posed the following set of limitations to the VE describing a

hypothetical individual:

> [A] range of light exertional work.  Lift, carry, push or pull 20 pounds
> occasionally, 10 pounds frequently; standing and walking is limited to six
> hours in an eight-hour day; sitting is limited to six hours in an eight-hour day
> with occasional balancing, stooping, crouching, crawling, kneeling and
> climbing stairs or ramps; no climbing of ladders, scaffolds or ropes, and no
> work around hazards such as unprotected heights or unguarded, dangerous
> moving machinery.  With these limitations, can you identify any jobs in the
> regional or national economy? (Tr. 126).

The VE testified that the above limitations would  allow for the light, unskilled work

of an assembler (10,000 positions in the regional economy); packager (8,000); and  inspector

(3,000) (Tr. 126).

The ALJ then posed a second hypothetical question:

> [S]edentary [work].  Lift, carry, push or pull ten pounds occasionally, five
> pounds frequently; standing and walking is limited to two hours in an eight-
> hour day at short stretches of five to ten minutes spread evenly throughout the
> day.  This individual could sit six hours in an eight-hour day with occasional
> balancing, stooping, crouching, crawling, kneeling, and climbing stairs or

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

ramps.  Again, no ladders, scaffolds or ropes and no work around hazards such as unprotected heights or unguarded, dangerous moving machinery.  With these limitations, are there any jobs in the regional or national economy? (Tr. 127).

The VE testified that the additional restrictions would allow for the sedentary work of an assembler (2,000); inspector (1,500); and hand polisher (1,000) (Tr. 127).  He added that the need to stand at the work station for up to five minutes each hour "at the individual's discretion" would not change the sedentary job numbers (Tr. 128).  He stated that the need to be off task for 20 to 25 percent of the workday to recline or manage symptoms would preclude all work (Tr. 84-85).

In response to questioning by Plaintiff's attorney, the VE stated that the need to miss four days of work each week, or, the need to arrive at work late or leave early would also preclude all employment (Tr. 128).  He testified that in unskilled work, the need to be off task for more than 10 percent of the workday would be work preclusive (Tr. 129).

### E.   The ALJ's Determination

Citing the medical transcript, ALJ Jordan found that Plaintiff experienced the severe impairments of "disorders of the spine; and obesity" but that neither of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).  He found that Plaintiff had not established the conditions of nerve root compression, spinal arachnoiditis, lumbar spinal stenosis and that the clinical findings did not support a finding of motor loss "accompanied by sensory or reflex loss" (Tr. 16).  ALJ Jordan determined that Plaintiff had an RFC for light work with the following additional restrictions:

-12-

> [L]ifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; standing and walking for six hours in an eight hour workday; sitting for six hours in an eight hour workday; occasionally stooping, balancing, crouching, kneeling, crawling, and climbing stairs or ramps; no climbing ladders, ropes, or scaffolds; and no work around hazards such as unprotected heights or unguarded dangerous moving machinery (Tr. 16).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform the light work of an assembler, packager, and inspector (Tr. 25, 127).

The ALJ discounted Plaintiff's professed degree of limitation. He noted Plaintiff's testimony that he sat in a chair all day contradicted his earlier report that he could fold clothes for 30 minutes, go grocery shopping once a month for two hours, read, use a computer, travel, wash his car, and visit with family and friends (Tr. 18). The ALJ noted that Plaintiff's ability to smoke between 20 and 40 cigarettes each day stood at odds with his claim that he experienced upper extremity radiculopathy preventing him from "gripping" multiple times each day (Tr. 18). The ALJ observed that the allegations of upper extremity radiculopathy were not backed up with nerve conduction studies (Tr. 18).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S.

197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).   The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).   In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

-14-

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

 Plaintiff makes two arguments in support of remand.  First, he contends that the objective studies, Dr. Francis' testimony, and his own complaints support the finding that he meets Listing 1.04.  *Plaintiff's Brief* at 6, *Docket #11,* Pg ID; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.  Second, he argues that the ALJ's selective reliance on certain portions of the record to support the RFC for light work stands at odds with the great weight of evidence supporting a disability determination.  *Id.* at 6-10.

Because determination of whether the RFC is adequately supported by the record is dispositive of the Listing 1.04 question, the arguments are considered in reverse order.

### A.  Substantial Evidence

Here, Plaintiff argues that the RFC for exertionally light work is not supported by substantial evidence.  He contends that the ALJ improperly "comb[ed] through the medical evidence and cherry pick[ed] and/or mischaracterize[d]" the record in support of the RFC. *Id.* at 8.  Plaintiff disputes the ALJ's reliance on Dr. Francis' testimony in support of the non-disability determination, arguing that Dr. Francis did not have benefit of Plaintiff's testimony from the first hearing.  *Id.* at 8-9.   Conversely, he argues that Dr. Francis' testimony supports rather than detracts from  allegations of limitation and that the ALJ improperly cited only the

portions of Dr. Francis' testimony supporting the non-disability determination.[4] *Id.* at 6, 10.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

The ALJ provided an adequate explanation for the RFC for a limited range of light work. As to the objective evidence, the ALJ noted that the RFC was supported by the MRI of the thoracic spine showing "no cord compression, cord signal changes, or neural forminal encroachment" (Tr. 18). The ALJ noted that a bone scan was wholly unremarkable (Tr. 18). He cited a treating neurosurgeon's finding that the limited degree of abnormality shown on the imaging studies was "'unlikely to cause problems'" (Tr. 18, 454).

In regard to the allegations of upper extremity radiculopathy or neuropathy, the ALJ noted that an MRI of the cervical spine did not show nerve root compression or cord abnormalities (Tr. 18). The ALJ pointed out that although Plaintiff sought and received

---

[4]While Plaintiff also devotes an entire page to the law pertaining to the deference accorded a treating physician's opinion, he does not state how the ALJ erred in regard to the treating records. Further, with the exception of one physician's statement that Plaintiff would be unable to work for relatively short period, the transcript does not contain a disability opinion from any source.

frequent treatment in the first year following his accident, the record did not contain nerve conduction or EMG studies establishing the existence of upper extremity symptoms (Tr. 18). He noted that a number of studies showed a full range of motion in the upper extremities (Tr. 18). He noted that while Dr. Qureshi found a reduced grip strength at a January, 2013 exam, there was "no indication of difficulty performing fine and gross movements effectively" (Tr. 20). The ALJ acknowledged the studies showing a reduced range of motion by limiting Plaintiff to lifting 20 pounds; occasional stooping, balancing, crouching, kneeling, crawling, and climbing stairs or ramps; and a preclusion on the use of ladders, ropes, or scaffolds (Tr. 20).

The ALJ also observed that Plaintiff's admitted range of activities stood at odds with the allegations of disability. He cited Plaintiff's self-reported ability to go out alone, drive short distances, handle money, fold clothes, grocery shop, read, use a computer, and socialize with family and friends (Tr. 18). The ALJ cited treatment records from the summer of 2014 noting that Plaintiff needed a refill of medicine immediately because he was leaving town (Tr. 18). The ALJ noted that Plaintiff's allegations of manipulative problems was undermined the treating records stating that his one to two-pack-a-day habit required him to "grip" up to 40 cigarettes a day (Tr. 18). The ALJ observed that while Plaintiff sought frequent treatment in the first nine months after the accident, the subsequent records showed "very minimal conservative treatment" (Tr. 19).

-17-

As to the opinion evidence, the ALJ accorded "little weight" to Dr. Singer's consultative finding that Plaintiff did not experience any appreciable level of physical limitation (Tr. 22).  Likewise, he gave only "little weight" to Dr. Buchman's consultative opinion, noting that Dr. Bachman's finding that Plaintiff was restricted to sedentary work was not well supported by the objective findings (Tr. 23).  He noted further that Dr. Buchman had no specific training in "radiology, neurology, or orthopedics" (Tr. 23).

In contrast, the ALJ accorded "great weight" to Dr. Francis' medical expert testimony, noting that while Dr. Francis observed one mention of radiculopathy in the record, "it was not present as a consistent diagnosis for at least a twelve-month period" as required for a finding of disability (Tr. 22).  The ALJ cited Dr. Francis' conclusion that "the evidence fails to demonstrate the requirements of neurological compromise" for a finding of disability at Step Three of the sequential analysis (Tr. 22).

Plaintiff cites HALLEX I-2-6-70 in support of the argument that Dr. Francis's opinion did not have the benefit of Plaintiff's testimony from the earlier hearing.[5]  *Plaintiff's Brief* at 9.  HALLEX I-2-6-70 states in pertinent part that "If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record." *Id.*

Plaintiff is correct that Dr. Francis, testifying on February 17, 2015, did not hear

---

[5]https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70. html.  (Last visited January 16, 2018).

Plaintiff's testimony at the May 2, 2014 hearing.  However, the HALLEX argument fails for multiple reasons.  As a threshold matter, "while the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Dukes v. CSS*, 2011 WL 4374557, at *9 (W.D.Mich. September 19, 2011)(*citing Bowie v. CSS*, 539 F.3d 395, 399 (6th Cir.2008)).

Further, although Plaintiff asserts that his testimony at the February 17, 2015 hearing was merely "supplemental," the ALJ directed Plaintiff's attorney to "update" the previous testimony (Tr. 83).  The "supplemental" testimony included Plaintiff's allegations of his limitations in sitting, standing, and walking (Tr. 83-85).  Plaintiff also testified that he experienced upper extremity symptoms of radiculopathy up to four times a day lasting for up to an hour and "give way" weakness in the lower extremities four times a week (Tr. 84-85).  Plaintiff testified to sleep disturbances and that he spent most of his day in a recliner and took many daytime naps (Tr. 86-87).  He testified that his dosage of Percocet had been "upped" since the last hearing and that he experienced light-headedness (Tr. 87).  He reported that he had recently begun taking psychotropic medication for symptoms of depression (Tr. 88).  Because Dr. Francis actually heard the "pertinent testimony" regarding "current medications[;] sources and types of treatment[;]" and allegations of functional limitations given at the second hearing, the ALJ was not required to "summarize" the older testimony.  Notably, Plaintiff does not point to any specific testimony from the first hearing that ought to have been conveyed to Dr. Francis.  *See Creech v. CSS*, 581 Fed.Appx. 519, 521 (6th Cir.

September 23, 2014)(remand for HALLEX violation appropriate only upon claimant's showing of prejudice).

Because the ALJ's rationale for weighing the medical evidence and Plaintiff's subjective allegations does not contain substantive or procedural error, a remand is not warranted based on these arguments.

### B. Listing 1.04

Plaintiff also argues that the ALJ erred at Step Three of the analysis by finding that he did not meet Listing 1.04. *Plaintiff's Brief* at 6; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04 (*Disorders of the Spine*).

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

For a disability finding under Listing 1.04, the claimant must make a threshold showing of a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[], resulting

in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.  The ALJ found that Plaintiff did not meet the threshold requirement of nerve root compression (Tr. 16).  Even assuming that the MRI of the thoracic spine showing "disc protrusions" meets the Listing's threshold showing, substantial evidence supports the ALJ's subsequent finding that Plaintiff did not meet the additional requirements of 1.04(A):

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Standing alone, the ALJ's finding of no "sensory or reflex loss" lasting for at least a 12-month period defeats Plaintiff's argument for disability under Listing 1.04(A).  The failure to present evidence of  one of the elements of the Listing 1.04(A) forecloses a finding of disability at Step Three.  *See Houston v. Colvin*, 2017 WL 82976, at *2 (E.D.Mich. January 10, 2017)(Drain, J.)(same).  As discussed above, while one consultative source made a diagnosis of radiculopathy in March, 2013, the bulk of the medical and other evidence stands at odds with Plaintiff's allegations of upper extremity symptomology.

In an "about-face," from his argument that Dr. Francis' findings were flawed, Plaintiff contends that Dr. Francis actually stated that the evidence supported a disability determination at Step Three.  *Plaintiff's Brief* at 6, 10 (*citing* Tr. 100).  However, this argument misrepresents Dr. Francis' testimony.  Dr. Francis allowed that Plaintiff "probably did have

-21-

a cervical radiculopathy [injury] at the time of the [accident]" (Tr. 100). However, he found that the initial radicular symptoms "probably cleared," noting that the allegations of "ongoing radiculopathy" had not "been correlated" (Tr. 101). He actually concluded that the evidence failed to show radiculopathy lasting for more than a 12-month period "that would [meet] a listing" (Tr. 102). Substantial evidence, including the testimony of Dr. Francis, supports the finding that Plaintiff did not meet Listing 1.04. As such, a remand on this basis is not warranted.

Accordingly, because the ALJ's decision was generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 22, 2018                         s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                U.S. MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on January 22, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 22, 2018.

                                                s/Carolyn M. Ciesla
                                                Case Manager for the
                                                Honorable R. Steven Whalen